# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

LAVALE BURNS, Individually and on behalf of all others similarly situated,

     Plaintiff,

v.

UP FINTECH HOLDING LIMITED *et al*.,

     Defendants.

Case No.:  CV 23-4842-CBM-BFMx

**ORDER RE: MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL [23] [25] [33] [38]**

The matters before the Court are:  (1) Xiangwei Darren's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel; (2) Ryann Jiin Yuan Lai's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel; (3) David W. Taylor's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel; and (4) Xu Haojie and Wong Haping's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel. (Dkt. Nos. 23, 25, 33, 38.)[1]  Ryann Jiin Yuan Lai subsequently filed a notice of non-opposition to the other motions for appointment as lead plaintiff.  (Dkt. No.

---

[1] Christopher L. Dudleck and Joon Sau Lee also filed a Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel (Dkt. No. 30), but subsequently filed a notice of withdrawal of their motion (*see* Dkt. No. 45).

1

42.)[2] Taylor, Darren, Haojie and Haping filed oppositions to the "competing" motions for appointment of lead plaintiff and approval of selection of counsel. (Dkt. Nos. 43, 44, 46.)

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This is a putative securities class action lawsuit brought on behalf of "persons or entities who purchased or otherwise acquired publicly traded UP Fintech securities between April 29, 2020 and May 16, 2023, inclusive." (Compl. ¶ 1.) On June 20, 2023, Plaintiff Lavale Burns filed the Complaint, which asserts the following two causes of action: (1) violations of Section 10(b) of the Securities Exchange Act (the "Act") and Rule 10b-5 against all Defendants;[3] and (2) violations of Section 20(a) of the Act against the Individual Defendants.[4] This lawsuit arises from alleged materially false and/or misleading statements regarding the level of risk of Up Fintech "operating unlicensed in China" (*see, e.g.,* Compl. ¶¶ 18, 25), and the decline in the market value of Up Fintech's common shares. On August 21, 2023, Xiangwei Darren, Ryann Jiin Yuan Lai, David W. Taylor, and Xu Haojie and Wong Haping filed the instant Motions for appointment as lead plaintiff and approval of selection of counsel. (Dkt. Nos. 23, 25, 33, 38.)

## II.    STATEMENT OF THE LAW

**A.    Lead Plaintiff(s)**

There is a three-step process for appointing a lead plaintiff under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *In re Mersho*, 6 F.4th 891,

---

[2] In Lai's notice of non-opposition, Lai states "[h]aving reviewed the competing motions filed in this action, [Lai] does not appear to have the largest financial interest in this litigation within the meaning of the PSLRA." (Dkt. No. 42.)

[3] The named Defendants are Up Fintech Holding Limited ("Up Fintech"), Tianhua Wu, and John Fei Zeng.

[4] The individual named defendants are Tianhua Wu (the CEO and Director of Up Fintech since January 2018), and John Fei Zeng (the CFO and Director of Up Fintech since October 2018). (Compl. ¶¶ 10, 11.)

899 (9th Cir. 2021) (citation omitted).  "In step one, notice of the action must be posted so purported class members can move for lead plaintiff appointment." *Id.* (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)–(II).)

"In step two, the district court must determine which movant is the 'most adequate plaintiff,' which is defined as the plaintiff 'most capable of adequately representing the interests of class members.'" *Id.* (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)). Under step two, "the district court must identify which movant has the largest alleged losses and then determine whether that movant has made a prima facie showing of adequacy and typicality . . . based on only the movant's pleadings and declarations." *Id*. (citation omitted).  "Once the district court has determined that the movant with the largest stake has made a prima facie showing of adequacy and typicality, that movant becomes the presumptively most adequate plaintiff." *Id.* (internal quotations and citation omitted).   "If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). This plaintiff then becomes the presumptive lead plaintiff.  *Id*.

At step three, the process "turns adversarial" and "[t]he presumption may be rebutted 'only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff ... will not fairly and adequately protect the interests of the class; or [] is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *In re Mersho*, 6 F.4th at 899 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb)).  To rebut the presumption, there must be "proof that the presumptive lead plaintiff is not adequate." *Id.*[5]  "If

---

[5] The PSLRA permits discovery if a movant can "demonstrate[ ] a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." *In re Mersho*, 6 F.4th at 899 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iv)).

the presumption is not rebutted, the presumptively most adequate plaintiff must be selected as lead plaintiff." *Id*. (citing 15 U.S.C. § 78u-4(a)(3)(B)(i)).

**B.    Lead Counsel**

Under the PSLRA, the lead plaintiff has the right, subject to court approval, to "select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v). "[T]he district court should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently."  *Cohen v. U.S. Dist. Ct.*, 586 F.3d 703, 711 (9th Cir. 2009) (citation omitted).  "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice."  *Id.* at 712 (citations omitted).

## III.    DISCUSSION

**A.    Person or Group of Persons Who Filed the Complaint or Made a Motion in Response to the Notice.**

Plaintiff Lavale Burns filed the Complaint in this action.  Moreover, Xiangwei Darren, Ryann Jiin Yuan Lai, Christopher L. Dudleck and Joon Sau Lee, David W. Taylor, and Xu Haojie and Wong Haping timely moved to be appointed Lead Plaintiff.[6]  Accordingly, they each meet the first requirement to be appointed Lead Plaintiff under the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

**B.    Presumptive Lead Plaintiff(s)**

Counsel for Haojie and Haping filed a declaration attaching a chart setting forth Haojie and Haping's financial interest in this litigation, which lists $170,885 in losses by Haping and $206,736 in losses by Haojie with respect to UP Fintech securities during the class period, for a collective total of $377,621.  (Pafiti Decl. ¶ 2, Ex. A.)  Counsel for Darren filed a declaration attaching a copy of a loss chart

---

[6] The statutory notice regarding this action was published on *Business Wire* on June 20, 2023 notifying putative class members of the pendency of the action and the right to move for appointment as lead plaintiff by August 21, 2023.  Therefore, each of the instant motions for appointment as lead plaintiff were timely filed. *See* 5 U.S.C. §§ 78u-4(a)(3)(A) and (B).

detailing the losses sustained by Darren, which lists $216,678.81 in losses by Darren during the class period.  (Apton Decl. ¶ 4, Ex. B.)  Counsel for David W. Taylor filed a declaration attaching an analysis of Taylor's financial interest in this action, which lists losses of $96,178.62 by Taylor during the class period. (Linehan Decl. ¶ 2, Ex. C.)  The Complaint attaches a certification from Plaintiff Burns wherein she declares and certifies under penalty of perjury that she purchased 2 shares of Up Fintech common stock on January 19, 2021 at a price of $14.99, and purchased 2 shares of common stock on February 1, 2021 at a price of $18.75.  (Dkt. No. 1-1.)

### 1. Xu Haojie and Wong Haping

#### a. Aggregation

Based on the evidence before the Court, Haojie and Haping collectively have the greatest financial interest in this action.  However, there is no evidence Haojie and Haping had a pre-litigation relationship prior to this action.[7]

The PSLRA contemplates the possibility that a "group of persons" might be the most adequate plaintiff to represent the class.  *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii).  However, "the Ninth Circuit has left open the question of whether a group can satisfy the largest financial interest" requirement by aggregating losses.  *See In re Cavanaugh*, 306 F.3d at 731 n.8 ("While a 'group of persons' can collectively serve as a lead plaintiff, 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I), we are not asked to determine whether a group can satisfy the 'largest financial interest' requirement by aggregating losses.").  "The majority of courts in this circuit have refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff." *Koffsmon v. Green Dot Corp.*, 2022 WL 170636, at

---

[7] At the hearing on the matters, Haojie and Haping's counsel represented that Haojie and Haping did not have a pre-litigation relationship.

5

*1 (C.D. Cal. Jan. 19, 2022) (collecting cases).[8]  Although "some courts have appointed a group of investors lead plaintiff even in the absence of a pre-existing relationship between the investors[,] . . . [i]n many such cases, . . . courts have based their approval upon the fact that one individual member of the proposed group, even standing alone, had a greater financial interest than any other proposed lead plaintiff." *Id*. at *3 (collecting cases).  "Such courts have also made findings, supported by evidence, that particular investor groups appear well-suited to cooperatively oversee class litigation and counsel." *Id*.

Here, neither Haping nor Haojie individually has a greater financial interest than all other movants seeking to be appointed as lead plaintiff.  (*Compare* Pafiti Decl. Ex. A (identifying Haping's and Haojie's individual losses as $170,885 and $206,736 respectively) *with* Apton Decl. Ex. B (identifying Darren's loss as $216,678.81).)[9]  *Cf. Koffsmon v. Green Dot Corp.*, 2022 WL 170636, at *3 (noting that while "some courts have appointed a group of investors lead plaintiff even in the absence of a pre-existing relationship between the investors[,] . . . [i]n many such cases, . . . courts have based their approval upon the fact that one individual member of the proposed group, even standing alone, had a greater financial interest than any other proposed lead plaintiff").  Permitting Haojie and Haping to aggregate their losses here would undermine the purpose of the PSLRA to "protect[ ] investors who join class actions against lawyer-driven lawsuits." *In re Cavanaugh*, 306 F.3d at 737; *see also In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d at 835-36; *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *3

---

[8] *See also In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835 (N.D. Cal. 2019); *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002).

[9] Haojie and Haping argued in their briefs that Darren's losses are actually $210,720.  However, Haojie and Haping's counsel represented at the hearing on the matters that after the parties met and conferred in good faith, Haojie and Haping no longer contend there has been any egregious error in Darren's calculation of his actual losses.  Even accepting Haojie and Haping's calculation of Darren's losses as $210,720 as set forth in their briefs, Haping and Haojie's individual losses are not greater than Darren's losses.

(D. Ariz. Apr. 7, 2008); *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307-08 (S.D.N.Y. 2001).  Under these circumstances, the Court declines to aggregate Haojie and Haping's losses so that they may be deemed the presumptive lead plaintiffs.  *See Koffsmon v. Green Dot Corp.*, 2022 WL 170636, at *3; *Crihfield v. CytRx Corp.*, 2016 WL 10587938, at *4 (C.D. Cal. Oct. 26, 2016); *Tsirekidze*, 2008 WL 942273, at *3.

### b. Adequacy

Even if the Court permitted Haojie and Haping to aggregate their claims despite having no prelitigation relationship so that they collectively have the greatest financial interest in this litigation, the Court finds Haojie and Haping cannot be appointed lead plaintiffs because they fail to satisfy Rule 23's adequacy requirement under step two of the analysis for appointment of lead plaintiff(s). Haojie and Haping fail to make a prima facie showing that Rule 23's adequacy requirement is satisfied because their joint declaration regarding their interest in prosecuting this action fails to establish a prelitigation relationship and includes only boilerplate statements that they would work together as co-lead plaintiffs.[10] *See Lako v. Loandepot, Inc.*, 2022 WL 1314463, at *6 (C.D. Cal. May 2, 2022) (finding group failed to make a prima facie showing that they satisfied Rule 23's adequacy requirements, reasoning the filing of a joint declaration by the group was not sufficient to demonstrate adequacy and the "sparse information regarding the individual members of the group," "boilerplate assurances that its members would work together to oversee the litigation," and failure to "provide any information regarding whether the members had a pre-litigation relationship" "cast doubt" on the group's "ability to failure and adequately protect the interests of the class and vigorously prosecute the action").  Haping and Haojie also declare

---

[10] In assessing adequacy, the Court may consider Haojie and Haping's lack of a pre-litigation relationship.  *See In re Mersho*, 6 F. 4th 891, 901 (9th Cir. 2021).

7

in their joint declaration that any disagreements will be resolved by a "majority vote, in which each of us possesses a number of votes equal to our losses incurred in connection with our Class Period purchases of UP Fintech securities, calculated in terms of U.S. Dollars" (Haojie and Haping Joint Decl. ¶ 10), which raises the possibility that litigation decisions will be made by a single investor with a smaller financial stake in the litigation.  *See Koffsmon v. Green Dot Corp.*, 2021 WL 3473975, at *3 (C.D. Cal. Aug. 6, 2021); *Isaacs v. Musk*, 2018 WL 6182753, at *2 (N.D. Cal. Nov. 27, 2018).  Moreover, Haojie and Haping fail to demonstrate they can adequately control counsel since their joint declaration indicates they have been grouped together by lawyers in order to be appointed as lead plaintiffs based on their aggregate losses.  *See In re Mersho*, 6 F.4th at 901-02; *Tsirekidze*, 2008 WL 942273, at *3; *In re Network Assoc. Inc. Sec. Lit.*, 76 F. Supp. 2d 1017 (N.D. Cal. 1999).  In addition, Haojie and Haping jointly declare that "[i]n addition to Pomerantz [LLP], we are also represented by the Chinese law firm the Hao Law Firm in this action."  (Haojie and Haping Joint Decl. ¶ 1.)  However, Haojie and Haping do not request appointment of the Hao Law Firm as Lead Counsel nor explain how Hao Law Firm and Pomerantz will work together to represent the class in this action, which further indicates this action would be "lawyer-driven" and that Haojie and Haping are not adequate to monitor and control counsel if they are appointed as lead plaintiffs.  *See Koffsmon v. Green Dot Corp.*, 2021 WL 3473975, at *3 (noting "the Joint Declaration provides no explanation why the IGG has chosen to retain two separate law firms," and concluding "to allow the IGG to aggregate its members' losses" under such circumstances "would be to undermine the PSLRA's objective of preventing lawyer-driven litigation").

Accordingly, even if the Court permitted Haojie and Haping to aggregate their losses so that they collectively have the greatest financial interest in the litigation, Haojie and Haping fail to satisfy Rule 23(a)'s adequacy requirement as

required to be deemed the presumptive lead plaintiffs.[11]  Therefore, the Court must consider the movant with the next-largest financial stake and determine whether the movant satisfies the requirements of Rule 23.  *In re Cavanaugh*, 306 F.3d at 730.

### 2.     Xiangwei Darren

Having declined to aggregate the losses of Haojie and Haping (and alternatively finding Haojie and Haping fail to satisfy Rule 23's adequacy requirement under step two), the next movant who claims to have the largest financial interest in the litigation is Xiangwei Darren.  (*See* Apton Decl. ¶ 4, Ex. B (identifying $216,678.81 in losses by Darren during the class period).)

As to adequacy, the Court finds demonstrably false statements made by Darren raise serious concerns regarding his ability to adequately represent the class.  While Darren argues in his motion that he received "valid assignments of claims from his wife, Tee Chien Wei Gynette, his sister, Ang Pei Qi ['Qi'], and their mother, Phang Chiew Yoon ['Yoon'], that transfer[] all right and title to prosecute all causes of action relating to their transactions in UP Fintech securities" (Dkt. No. 23-1 at 1 n.3), two of the three assignors assigned their claims to Darren after the date of Darren's Certification.  (*See* Dkt. No. 23-3 at 2 (Darren Certification dated August 16, 2023 certifying under penalty of perjury that "[m]y transaction(s) in UP Fintech Holding Limited which are the subject of this litigation during the class period set forth in the complaint are set forth in the chart attached hereto."); *id*. at 13 (assignment by Ang Pei Qi of UP Fintech securities to Darren dated August 18, 2023—i.e., two days after Darren's Certification); *id*. at 14 (assignment by Phan Chiew Yoon of UP Fintech securities to Darren dated August 19, 2023—i.e., 3 days after Darren's Certification).)  In

---

[11] Having found Haojie and Haping are not adequate to represent the class, the Court does not reach the argument raised by Taylor that Haojie and Haping's claims would be subject to the unique day-trader defense which renders their claims atypical of the class.

9

his reply, Darren argues he received "oral" assignments from his family members

and submits a supplemental declaration wherein he declares:

> Between July 28, 2023 and August 3, 2023, I discussed with my wife, sister, and mother my interest in serving as the lead plaintiff in this lawsuit against UP Fintech on our family's behalf.  They authorized me at that time to proceed on their behalf given that I manage my family's portfolio of investments and was responsible for the investments in UP Fintech.  On August 16, 2023, I signed a PSLRA certification on behalf of myself and my family.  Prior to signing this certification, my wife, sister, and mother had already authorized me to act on their behalves [sic] with respect to the lawsuit.  In addition to receiving their verbal authorization, I obtained formal 'assignments' from my wife, sister, and mother contemporaneously with the signing of my PSLRA certification.  My understanding of the 'assignments' is that they memorialized the authority they had already given me during our prior conversations to act on their behalves [sic] with respect to this lawsuit.

(Suppl. Darren Decl. ¶¶ 3-5.)  However, Darren does not declare he received oral

assignments of the UP Fintech securities from his family members prior to signing

his initial Certification on August 16, 2023; rather, Darren declares he was

authorized to proceed on their behalf with respect to the lawsuit.  Therefore, there

is no evidence that Darren had obtained assignments of UP Fintech securities from

his family members prior to signing his August 16, 2023 Certification.

Moreover, Darren's supplemental declaration falsely states he obtained

"formal 'assignments'" from his family members "contemporaneously with the

signing of [his] PSLRA certification" (Suppl. Darren Decl. ¶ 5).  (*But see* Dkt. No.

23-2 at 13, 14 (written assignments dated two days and three days after the date of

Darren's August 16, 2023 Certification).)  Thus, Darren's reliance in his motion

on written assignments which were dated after the date of his August 16, 2023

Certification signed under penalty of perjury raises serious concerns regarding

Darren's ability to adequately represent the class.  *See, e.g., Camp v. Qualcomm*

*Inc.*, 2019 WL 277360, at \*3 (S.D. Cal. Jan. 22, 2019); *In re Boeing Co. Aircraft*

*Sec. Litig.*, 2020 WL 476658, at \*5 (N.D. Ill. Jan. 28, 2020); *Tomaszewski v.*

*Trevena, Inc.*, 383 F. Supp. 3d 409, 414-15 (E.D. Pa. 2019); *Rodriguez v.*

*DraftKings Inc.*, 2021 WL 5282006, at *6, *9 (S.D.N.Y. Nov. 12, 2021).

Darren also submits an "amended certification" in support of his reply, which counsel declares "corrects an omitted purchase in 'Account #3' due to a typographical error i.e., the date of the purchase was recorded in 2023 instead of 2021." (Apton Decl. ¶ 3.)  The errors in Darren's original Certification signed under penalty of perjury further demonstrate Darren will not adequately represent the class.  *See In re Boeing Co. Aircraft Sec. Litig.*, 2020 WL 476658, at *5; *Tomaszewski*, 383 F. Supp. 3d at 414-15; *Rodriguez*, 2021 WL 5282006, at *6, *9.

Therefore, the Court finds Darren does not satisfy Rule 23's adequacy requirements.[12]  Accordingly, the Court must consider the movant with the next-largest financial stake and determine whether the movant satisfies the requirements of Rule 23.  *In re Cavanaugh*, 306 F.3d at 730.

### 3.    David W. Taylor

The next movant with the greatest financial interest in the litigation is David W. Taylor.  (*See* Linehan Decl. Ex. C (identifying $96,178.62 in losses by Taylor during the class period).)  The Court must therefore determine whether Taylor satisfies the typicality and adequacy requirements of Rule 23.  *See In re Cavanaugh*, 306 F.3d at 730.

To determine whether the typicality requirement is satisfied, the Court must analyze "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  Here, Taylor's claims are typical of the putative class because they are based on the same legal theory and arise from the same events as the putative class members' claims.[13]

---

[12] Having found Darren is inadequate to represent the class, the Court does not reach the argument raised by Taylor that Darren's claims would be subject to the unique day-trader defense which renders his claims atypical of the class.

[13] No movant contends Taylor's claims are atypical of the class.

With respect to adequacy, the Court must determine whether Taylor will adequately represent the class by analyzing whether Taylor has any conflicts of interest with other class members, and whether Taylor will "prosecute the action vigorously on behalf of the class." *In re Mersho*, 6 F.4th at 899–900 (citation omitted). Here, Taylor declares under penalty of perjury that he has reviewed the Complaint and adopted its allegations, he did not purchase UP Fintech securities at the direction of counsel nor in order to participate in any private action arising under the PSLRA, he is willing to serve as a representative party on behalf of a class and will testify at deposition and trial if necessary, and he will not accept any payment for serving as a representative party, except to receive his pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses including lost wages directly relating to the representation of the class. (Taylor Decl. ¶¶ 1-3, 5-6.) Taylor's counsel submits an analysis of Taylor's financial interest in the litigation based on the transactions of UP Fintech securities during the class period(*see* Linehan Decl. Ex. C), which indicates Taylor has a strong interest in prosecuting this action on behalf of the class. *See In re Mersho*, 6 F.4th at 899–900. There is no evidence before the Court demonstrating Taylor has any conflicts of interest with the class or that he will not prosecute the action vigorously on behalf of the class. *Id*.[14] Accordingly, Taylor satisfies Rule 23's adequacy requirement.[15]

\* \* \*

Because Taylor demonstrates his claims are typical of the class and he will adequately represent the class, the Court finds Taylor is the presumptive lead plaintiff. No movant argues Taylor fails to satisfy the requirements of Rule 23. Accordingly, the Court appoints Taylor as lead plaintiff. *See In re Cavanaugh*,

---

[14] There is no evidence before the Court demonstrating Taylor's selected counsel has conflicts of interest with other class members or that counsel will not prosecute the action vigorously on behalf of the class. (*See* infra.)

[15] No movant contends Taylor will not adequately protect the interests of the class.

306 F.3d at 732; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## C. Lead Counsel

The PSLRA vests authority in the Lead Plaintiffs to select and retain counsel to represent the class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Here, Taylor has selected Glancy, Prongay & Murray LLP as lead counsel. Charles Linehan, an attorney with Glancy, Prongay & Murray LLP, submits evidence regarding the firm's experience in securities class actions for over 25 years, experience as lead counsel for the class in numerous securities fraud cases, and recognition as one of the top plaintiffs' law firms in the United States for securities class actions every year since 2003. (Linehan Decl. Ex. D.) There is no evidence before the Court demonstrating Glancy, Prongay & Murray LLP will not adequately represent the class. Therefore, the Court approves Glancy, Prongay & Murray LLP as lead counsel in this action. *See Cohen*, 586 F.3d at 712.

## IV. CONCLUSION

Accordingly, the Court:

(1) **GRANTS** David W. Taylor's Motion for Appointment as Lead Plaintiff and Approval of Glancy, Prongay & Murray LLP as Lead Counsel;

(2) **DENIES** Xu Haojie and Wong Haping's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel Pomerantz LLC;

(3) **DENIES** Xiangwei Darren's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel; and

(4) **DENIES** Ryann Jiin Yuan Lai's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel.

**IT IS SO ORDERED.**

DATED: January 30, 2024.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

13